**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| **CHRISTOPHER MORGAN, individually** | ) | |
| **and on behalf of a class of persons and** | ) | |
| **entities similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:17-cv-00085** |
| | ) | |
| **U.S. XPRESS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND 12(b)(2)

U.S. Xpress, Inc. submits this memorandum in support of its Motion to Dismiss two aspects of Plaintiff's Amended Complaint under Rules 12(b)(6) and 12(b)(2). First, U.S. Xpress moves to dismiss Count One because Plaintiff fails to allege sufficient facts to state a claim. Second, U.S. Xpress moves to dismiss the claims of the purported class members who reside in states outside of Virginia for lack of personal jurisdiction.

## Introduction

U.S. Xpress is a private trucking company that was founded in 1986 with a modest fleet of under 50 trucks. Since that time, the company has grown through innovative solutions for its clients, personalized customer service, and a motivated work force. Indeed, this lawsuit stems from alleged telephone calls connected to U.S. Xpress' efforts to recruit skilled truck drivers. Specifically, Plaintiff claims U.S. Xpress called him on four occasions over a two-month span to see if he was interested in speaking with a U.S. Xpress recruiter. (ECF 4, at ¶¶ 12-14). Based on these four calls, Plaintiff brings a class action lawsuit against U.S. Xpress under the Telephone

Consumer Protection Act ("TCPA").  It is at least the *third* TCPA class action Plaintiff has filed in this Court.  U.S. Xpress moves to dismiss two aspects of Plaintiff's Amended Complaint.

First, the Court should dismiss Count One because Plaintiff cannot plausibly allege U.S. Xpress called his residential telephone line.  Specifically, Plaintiff asserts two claims in this case. In Count One, he claims that U.S. Xpress violated the TCPA provision that governs calls to residential telephone lines.  *See* 47 U.S.C. § 227(b)(1)(B).  In Count Two, he asserts a TCPA claim that requires calls to a cellular telephone service.  *See* 47 U.S.C. § 227(b)(1)(A).  These provisions pertain to calls to different and distinct types of telephones.  The problem for Plaintiff, though, is that U.S. Xpress only allegedly called one phone – his cellular phone.  As a result, he attempts to have it both ways by labeling his telephone a "residential, cellular telephone line." (ECF 4, at ¶ 12).  There is no such thing under § 227(b) of the TCPA.  A phone can be a residential line or a cellular line, but not both.  Courts consistently distinguish between these types of devices under § 227(b), and they consistently dismiss claims premised on an inapplicable telephone line.  The Court should do the same here as to Count One.

Second, the Court should dismiss the portion of Plaintiff's class claims that relate to purported class members who do not reside in Virginia.  Plaintiff seeks to represent "[a]ll persons within the United States (a) to whom U.S. Xpress initiated a telephone call, (b) to a residential or cellular telephone line, (c) using an artificial or prerecorded voice…."  (ECF 4, at ¶ 17).  This includes individuals who reside outside of Virginia (the "Purported Nonresident Class").  In 2017, the United States Supreme Court issued a seminal decision in *Bristol-Myers Squibb Co. v. Superior Court,* 137 S. Ct. 1773, 1781 (2017), holding that a court cannot exercise personal jurisdiction over a defendant with respect to claims of nonresidents that have no connection to the forum.  This is true even if the nonresidents have claims that are similar to

residents' claims. *Bristol-Myers* requires the Court to dismiss the Purported Nonresident Class' claims. They have no connection to Virginia.

## Facts

### A. Plaintiff alleges that U.S. Xpress violated the TCPA by calling his "residential, cellular telephone line."

Plaintiff filed his initial Complaint against U.S. Xpress in December 2017. In this initial Complaint, Plaintiff claimed that U.S. Xpress violated the TCPA by: (1) using an automatic telephone dialing system ("ATDS") to call his cellular telephone; and (2) using an artificial or prerecorded voice to deliver a message to his residential telephone. (ECF 1, at ¶¶ 31-36). He specifically alleged in the initial Complaint that U.S. Xpress placed calls to his "*cellular telephone line*." (ECF 1, at ¶ 13) (emphasis added).

Three months after his initial Complaint, Plaintiff filed an Amended Class Action Complaint ("Amended Complaint"). (ECF 4). In the Amended Complaint, Plaintiff modified his allegations to no longer focus on U.S. Xpress' alleged use of an ATDS. Instead, he focuses on U.S. Xpress' alleged placement of artificial or prerecorded calls, regardless of the type of dialing system used. Specifically, he claims U.S. Xpress violated the TCPA by: (1) placing prerecorded or artificial voice calls to residential telephone lines; and (2) placing prerecorded or artificial voice calls to cellular telephone lines. (ECF 4, at ¶¶ 29-34). Because one of Plaintiff's claims requires calls to a residential telephone line, Plaintiff now describes the very same telephone that he described as a cellular telephone in his initial Complaint as a his "residential, cellular telephone line" in the Amended Complaint. (ECF 4, at ¶ 12).

### B. Plaintiff referred to the same telephone line as his "cellular telephone" in previous cases.

This case is not the only TCPA case Plaintiff has brought in this District. He is a serial TCPA litigant. Plaintiff has been the named plaintiff in at least three purported TCPA class

actions before this Court. Plaintiff's representations in his pleadings in each of these actions bear on Plaintiff's inability to state a claim here.

Plaintiff's first TCPA case in this District was *Morgan v. Emerchantbroker.com*, No. 3:17cv23 (W.D. Va. March 23, 2017) (Moon, J.). In that case, Plaintiff sued the defendant under a TCPA provision that requires calls to cellular telephones. *Id.* at ECF 4, at ¶ 39. As a result, in the *Emerchantbroker* Complaint, he represented to the Court that his number ending in x8433 was a "cellular telephone number." *Id.* at ECF 4, at ¶ 19. This is the same number at issue here.

Plaintiff's second TCPA case in this District is *Morgan v. On Deck Capital, Inc.*, No. 3:17cv45 (W.D. Va. July 10, 2017) (Moon, J.). That case also alleges a violation of the TCPA provision that governs calls to cellular telephones. *Id.* at ECF 1, at ¶ 31. Because of that requirement, Plaintiff once again represented to the Court in the *On Deck* matter that his telephone number ending in x8433 was a "cellular telephone number." *Id.* at ECF 1, at ¶ 13.

The present case is Plaintiff's third TCPA case in this District. It involves the same telephone number ending in x8433 that was involved in his two previous cases. But because this is the first case in which Plaintiff wants to assert a TCPA claim regarding calls to residential telephone lines, he has re-branded his telephone number as a "residential, cellular telephone line" in the Amended Complaint. (ECF 4, at ¶ 12). The Court should not permit Plaintiff to vacillate on his representations to the Court based on what is expedient at the time.

### C. Plaintiff asserts his claims on behalf of a class that has no connection to Virginia.

Plaintiff asserts both of his TCPA claims in the Amended Complaint on behalf of "all persons within the United States (a) to whom U.S. Xpress initiated a telephone call, (b) to a residential or cellular telephone line, (c) using an artificial or prerecorded voice…." (ECF 4, at ¶ 17). Although Plaintiff represents that he resides in Gordonsville, Virginia and that U.S. Xpress is a Nevada Corporation that is headquartered in Tennessee, (ECF 4, at ¶¶ 5-6), he does not make

any representations regarding the residency of the purported class members. (Am. Compl. *passim*). Besides the allegations related to Plaintiff himself, there are no allegations that any other purported class members are connected to Virginia in any meaningful way. *Id.* Plaintiff does not allege that the purported class members live in Virginia, experienced the alleged violative calls in Virginia, or that their claims have any connection to Virginia whatsoever. *Id.*

### Standard of Review

This motion is governed by two separate provisions of Rule 12 of the Federal Rules of Civil Procedure. U.S. Xpress' argument regarding Plaintiff's inability to state a claim in Count One falls under Rule 12(b)(6), whereas, at this stage, Rule 12(b)(2) applies to U.S. Xpress' argument as to personal jurisdiction.

### A. Standard under Rule 12(b)(6).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations marks omitted). Although factual allegations must be accepted, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must plead "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 556, 570. The Court need not accept the legal conclusions, inferences, or arguments that are drawn from the facts. *Id.* Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to "'produce an

inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009).

When ruling on a motion to dismiss, the "court may consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice' without converting a 12(b)(6) motion into a motion for summary judgment." *Deane v. Marshalls, Inc.*, Civil Action No. 5:11cv00135, 2012 U.S. Dist. LEXIS 170413, at *3-4 n.4 (W.D. Va. Nov. 30, 2012) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A court may take judicial notice of matters of public record, such as "publicly-recorded papers from prior court proceedings," even when those matters are not referenced in the plaintiff's complaint. *Clark v. BASF Salaried Emples. Pension Plan*, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004); *Deane*, 2012 U.S. Dist. LEXIS 170413, at *3-4 n.4 (noting that court filings are matters of public record); *Fabian v. Home Loan Ctr.*, Civil Action No. 5:14-CV-42, 2014 U.S. Dist. LEXIS 56954, at *16-17 n.7 (N.D.W. Va. Apr. 24, 2014) ("All of these bankruptcy court filings are matters of public record, this Court takes judicial notice of the same and will consider them without converting Lending Tree's Rule 12(b)(6) motion to a motion for summary judgment.").

**B. Standard under Rule 12(b)(2).**

"The standard of review for personal jurisdiction issues 'varies according to the posture of the case and the evidence that has been presented to the court.'" *Reed v. Beverly Hills Porsche*, No. 6:17cv00059, 2018 U.S. Dist. LEXIS 21349, at *2 (W.D. Va. Feb. 8, 2018) (quoting *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016)). "'When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a *prima facie* showing in support of its assertion

of jurisdiction.'" *Id.* at *3 (quoting *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014)) (emphasis in original). In the present posture, the Court must examine whether Plaintiff has met his burden of showing personal jurisdiction as to Purported Nonresident Class.

<u>Argument</u>

**A. The Court should dismiss Count One because Plaintiff cannot allege facts showing that U.S. Xpress placed calls to a residential telephone line.**

**1. Plaintiff must prove that U.S. Xpress called a residential telephone line.**

In Count One, Plaintiff alleges that U.S. Xpress violated the TCPA "by using a prerecorded or artificial voice to deliver a message to the Plaintiff's…residential telephone line[]." (ECF 4, at ¶ 30). A defendant cannot be liable under the TCPA provision at issue if the line called is not a "residential telephone line." Indeed, the statute only makes it unlawful "to initiate any telephone call to any *residential telephone line*…" 47 U.S.C. § 227(b)(1)(B) (emphasis added). Calls to cellular telephones are governed by a separate provision. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (regulating calls to "any telephone number assigned to a…cellular telephone service").

Consistent with the TCPA's plain language and structure, courts interpreting § 227(b)(1)(B) have limited its applicability to calls to residential telephone lines. *See Eldridge v. Cabela's Inc.*, No. 3:16cv536, at *32 n.5 (W.D. KY. Sept. 29, 2017) (finding that § 227(b)(1)(B) "concerns 'residential telephone line[s]' only (i.e., landlines)"); *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 995 (N.D. Ill. 2016) (recognizing that § 227(b)(1)(B) only applies to calls to "landlines"); *Sliwa v. Bright House Networks, LLC*, No. 2:16cv235, 2016 U.S. Dist. LEXIS 93852, at *2 n.2 (M.D. Fla. July 19, 2016) ("…Section 227(b)(1)(B) prohibits calls to residential telephone lines, not cell phones…"). Accordingly, to prove liability in Count One, Plaintiff must show that U.S. Xpress initiated a call to a residential telephone line.

7

**2. Residential telephones and cellular telephones are different under § 227(b).**

Although the TCPA does not define the phrases "cellular telephone service" or "residential telephone line," courts interpreting these phrases make clear that the two types of telephones are distinct. Calls to cellular telephones do not double as calls to residential telephones under the relevant TCPA provision, regardless of how a plaintiff classifies the telephone. Courts have highlighted this distinction in several different ways.

For example, when discussing residential telephone lines under § 227(b)(1)(B), courts repeatedly refer to them as "landlines." *See Dolemba,* 213 F. Supp. 3d at 994 (referring to 47 U.S.C. § 227(b)(1)(B) as regulating "Landline Calls"); *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 826 (N.D. Ill. Apr. 18, 2016) ("Section 227(b)(1)(B) specifically provides that the FCC may fashion exemptions to TCPA liability for calls made to residential landlines."); *Goldman v. HIS Fin. Servs., LLC*, No. 1:14cv307, 2014 U.S. Dist. LEXIS 189339, at *6 (N.D. Ga. Nov. 25, 2014) ("Section 227(b)(1)(B) of the TCPA prohibits certain telephone calls made to residential landlines."). A call made to a cellular telephone service is not a call made to a landline under either § 227(b)(1)(B) or the generally understood meaning of the phrase. Indeed, common dictionary definitions of cellular telephones highlight the fact that they are not tethered to a home or the "land." *See* "Cellular Telephone." *Merriam-Webster.com*. 2018. https://www.merriam-webster.com/dictionary/cellular%20telephone (March 26, 2018) ("[A] small telephone that people can take with them and use outside their homes.").

Consistent with this approach, courts repeatedly differentiate TCPA claims that require calls to cellular telephone services from claims that require calls to residential telephone lines, and they do not hesitate to dismiss claims involving the wrong telephones. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, (3d Cir. Aug. 22, 2013) (discussing TCPA regulations and

stating "Dell fails to recognize that these exemptions do not apply to cellular phones; rather, these exemptions apply only to autodialed calls made to land-lines"); *Bonanno v. New Penn Fin., LLC*, No. 5:17cv229, 2017 U.S. Dist. LEXIS 118407, at *13-14 (M.D. Fla. July 28, 2017) ("Bonanno failed to allege why calls to her landline phone would be a violation of the TCPA under section 227(b)(1)(A)(iii) since calls to a landline are generally subject to violations of section 227(b)(1)(B)); *Rahn v. Bank of Am.*, No. 1:15cv4485, 2016 U.S. Dist. LEXIS 186171, at *13 (N.D. Ga. June 23, 2016) ("The statute clearly differentiates between calls to residential lines (covered by § 227(b)(1)(B)) and calls to cellular and other types of mobile lines (§ 227(b)(1)(A)), as is applicable here.").

At bottom, the TCPA treats cellular telephone services and residential telephone lines differently under § 227(b)(1)(B). A telephone can be one or the other, but not both.

### 3. The Court should reject Plaintiff's attempt to cast his phone as both a cellular telephone service and a residential telephone line.

In Plaintiff's Amended Complaint, he tries to have it both ways. Because he wants to assert a claim under the TCPA's residential telephone provision *and* the TCPA's cellular telephone provision, he classifies his telephone as a "residential, cellular telephone line." (ECF 4, ¶ 12). Plaintiff's creative pleading cannot save Count One. He cannot state a plausible claim because: (1) his allegation that his telephone is a residential telephone contradicts multiple representations to the Court; (2) a "residential, cellular telephone line" does not exist under § 227(b)(1)(B); and (3) courts consistently reject the argument Plaintiff advances here.

First, Plaintiff cannot plausibly demonstrate that U.S. Xpress called his residential telephone line because it would contradict Plaintiff's repeated representations to the Court. Every TCPA complaint Plaintiff has filed in this Court involved telephone calls to his x8433 telephone number. And in every complaint, Plaintiff referred to this telephone number as his

cellular telephone. In *Emerchantbroker*, Plaintiff represented that the x8433 number was a "cellular telephone number." *See Morgan v. Emerchantbroker.com*, No. 3:17cv23, at ECF 4, at ¶ 19. Similarly, in *On Deck*, Plaintiff claimed his telephone number ending in x8433 was his "cellular telephone number." *See Morgan v. On Deck Capital, Inc.*, No. 3:17cv45, ECF 1, at ¶ 13. And even in this case, Plaintiff claimed in his first complaint that the x8433 number was his cellular telephone line. (ECF 1, at ¶ 13). Although the Court is required to look at allegations in the light most favorable to the non-movant at this stage, the Court need not ignore representations Plaintiff has made in previous pleadings. The Court is permitted to take judicial notice of these previous statements. *See, e.g. Clark*, 329 F. Supp. 2d at 697.

Second, Plaintiff cannot demonstrate that U.S. Xpress called his "residential, cellular telephone line" because that type of line does not exist under § 227(b)(1)(B). Regardless of how Plaintiff may describe his telephone, that does not change the fact that he has described a legal fiction for TCPA purposes. A telephone line is either a residential line or a cellular line under § 227(b)(1)(B). By describing his telephone as a "residential, cellular telephone line," Plaintiff asks the Court to draw the legal conclusion that a telephone can be both residential and cellular under § 227(b)(1). The Court need not credit Plaintiff's erroneous legal conclusions on a motion to dismiss. *See Birmingham v. PNC Bank, N.A.,* 846 F.3d 88, 92 (4th Cir. 2017) ("The court is not obligated to assume the veracity of the legal conclusions drawn from the facts alleged.").[1]

Third, courts have rejected the precise theory Plaintiff advances here – that a telephone can be both a residential telephone and a cellular telephone under § 227(b)(1)(B). For example,

---

[1] To the extent the Court is not inclined to dismiss Count One by itself, the Court should dismiss *both* Counts One and Two. Because a telephone line that is both residential and cellular does not exist under the relevant provision of the TCPA, Plaintiff has failed to plausibly allege that U.S. Xpress called either a residential telephone line (Count One) or a cellular telephone service (Count Two). Instead, he has alleged that U.S. Xpress called a legal fiction, which cannot lay the groundwork for liability under either count in the complaint. By trying to have it both ways, Plaintiff has failed to allege a crucial element – the type of phone at issue – of either claim.

the plaintiff in *Cunningham v. Caribbean Cruise Lines, Inc.*, No. 15-62580, 2016 U.S. Dist. LEXIS 179758, at *4 (S.D. Fla. Dec. 29, 2016), brought a claim under the TCPA's residential telephone line provision based on calls to a telephone that served "as both a mobile and residential line." In response, the court dismissed the plaintiff's claims *with prejudice* at the motion to dismiss stage. In the court's view, "residential land line telephone numbers" and "cell-phone numbers" are distinct under § 227(b)(1). *Id.* (citations omitted). Accordingly, the court found "Plaintiff's assertion that a cellular phone can be converted into a residential phone unavailing." *Id.* at *5-6. This is exactly what Plaintiff is claiming here. The Court should dismiss Count One. *See also Vandiver v. Global Credit & Collection Corp.*, No. 4L14cv00011, 2015 U.S. Dist. LEXIS 179576, at *8 (E.D. Ark. Mar. 30, 2015) (dismissing claims related to cellular telephone lines at the motion to dismiss stage because allegations of calls to "residential and/or cellular telephone lines" were insufficient to state a claim).

**B. The Court should dismiss Plaintiff's claims pertaining to the Purported Nonresident Class based on lack of personal jurisdiction.**

The Court should also dismiss the portion of Plaintiff's Amended Complaint in which he seeks to represent the Purported Nonresident Class. U.S. Xpress is not subject to personal jurisdiction as to these class members' claims under the Supreme Court's *Bristol-Myers* decision. A court cannot exercise personal jurisdiction over a defendant with respect to claims of nonresidents that have no connection to the forum, even if those nonresidents have claims that are similar to residents' claims in the same case.

**1. The Court must conduct a two-part inquiry to assess personal jurisdiction.**

"To exercise personal jurisdiction over a non-resident defendant in a federal question case, a federal court must: (i) initially establish whether defendant is amenable to service of summons under an applicable statute or rule and (ii) determine if that service comports with the

Fifth Amendment's due process principles." *Bd. Of Trs., Sheet Metal Works' Nat'l Pension Fund v. Boeser, Inc.*, No. 1:14cv1458, 2015 U.S. Dist. LEXIS 11244, at *4 (E.D. Va. Jan. 28, 2015). Effectively, a court asks two questions: (1) is the defendant amendable to service under Federal Rules of Civil Procedure; and (2) if so, is the exercise of personal jurisdiction consistent with due process? *Id.* (citations omitted). *See also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d. Cir. 2010) (outlining the two-part test for personal jurisdiction in federal question cases). For the purposes of this motion only, U.S. Xpress does not contest that it is subject to service of process under the Federal Rules of Civil Procedure. But, as discussed below, the exercise of personal jurisdiction as to the Purported Nonresident Class would violate U.S. Xpress' due process rights.

### 2. The two questions merge in this case, leaving only the question of whether personal jurisdiction is proper under the Fourteenth Amendment.

U.S. Xpress waived service of process pursuant to the Federal Rules of Civil Procedure. (*See* ECF 3). When a defendant is served pursuant to the Federal Rules (or waives service), a court looks to Federal Rule of Civil Procedure 4(k)(1) to determine the effect of service as it pertains to establishing personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1). Under this rule, serving a summons establishes personal jurisdiction over a defendant in three limited instances:

> (A) when the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;"
>
> (B) when the defendant "is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued;" or
>
> (C) when personal jurisdiction is "authorized by a federal statute."

*Id.* Subsections (B) and (C) are inapplicable here. U.S. Xpress has not been joined under Rule 14 or 19. And, although the TCPA is a federal statute, it does not include any provision authorizing nationwide service in private actions. *See Practice Mgmt. Support Servs. v. Cirque*

*Du Soleil, Inc.*, No. 14 C 2032, 2018 U.S. Dist. LEXIS 39754, at *49 (N.D. Ill. Mar. 12, 2018) (quoting *Bakov v. Consol. Travel Holdings Grp., Inc.*, 2016 U.S. Dist. LEXIS 102291 (N.D. Ill. Aug. 4, 2016)) ("Because the TCPA does not authorize nationwide service of process, the court . . . look[s] to Illinois law for the limitation on the exercise of personal jurisdiction."). As a result, the Court can only exercise personal jurisdiction consistent with subsection (A).

Under Rule 4(k)(1)(A), a federal court can only exercise personal jurisdiction over a defendant to the same extent a court of "general jurisdiction in the state where the district court is located" could do so. *See* Fed. R. Civ. P. 4(k)(1)(A). Thus, although the Court is a federal court, its reach is synonymous with that of a Virginia state court of general jurisdiction for personal jurisdiction purposes. In other words, Rule 4(k)(1)(A) allows a court to exercise "personal jurisdiction over any defendant who would be subject to personal jurisdiction under the long-arm statute of the state in which the district court sits." *Hicks v. Jayco, Inc.*, No. 1:16cv1236, 2018 U.S. Dist. LEXIS 42333, at *4 (M.D.N.C. Mar. 15, 2018).

For a defendant to be subject to personal jurisdiction under a state's long-arm statute, jurisdiction must be "authorized by the long-arm statute" and "the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sc. Bd. Of Dirs. Of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). In Virginia, "[c]ourts have consistently construed [the long-arm statute] to extend jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment." *FireClean, LLC v. Tuohy*, No. 1:16cv0294, 2016 U.S. Dist. LEXIS 96294, at *12 (E.D. Va. July 21, 2016). As a result, the statutory analysis and the Constitutional analysis merge into one operative question: Although this case is pending in federal court and relates to a

13

federal statute, does forcing U.S. Xpress to litigate in Virginia against the Purported Nonresident Class violate its due process rights under the Fourteenth Amendment?  The answer is Yes.

### 3. U.S. Xpress' due process rights prevent the Court from exercising personal jurisdiction over the Purported Nonresident Class' claims.

Personal jurisdiction is the authority of a court to issue a judgment against a party in a particular case.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  The Fourteenth Amendment's due process guarantee requires that before a court exercises personal jurisdiction over a defendant, the defendant must have certain minimum contacts with the forum state such that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  There are two types of personal jurisdiction: general and specific.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

General or "all-purpose" personal jurisdiction exists over a company in its state of incorporation and the state of its principal place of business.  *Id.* at 751, 754.  "A court with general jurisdiction may hear *any* claim against [a] defendant, even if all incidents underlying the claim occurred in a different State."  *Bristol-Myers*, 137 S. Ct. at 1780 (emphasis in original) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  In "exceptional case[s]," general jurisdiction may exist where a company's activities in a state are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S. Ct. at 761 n.19.  However, merely placing a product into the stream of commerce or doing business in a state is not sufficient.  *Id.* at 757 (citations omitted).

In contrast to general jurisdiction, specific or "conduct-linked" jurisdiction involves lawsuits "arising out of or related to the defendant's contacts with the forum."  *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  For a party to be subject to specific jurisdiction, there must be "an affiliation between the forum and the underlying

controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks and brackets omitted). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919). Specific jurisdiction is determined by the "link" between the plaintiff's claims—*i.e.*, defendant's wrongdoing—and the forum state. *Id.* at 1781.

### a. The Court cannot exercise general jurisdiction over U.S. Xpress in Virginia.

Although it is Plaintiff's burden to do so, he fails to allege that U.S. Xpress is subject to any form of personal jurisdiction in Virginia in his Amended Complaint, let alone general jurisdiction. U.S. Xpress is not subject to general jurisdiction here.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. The paradigmatic example of a such a state is a corporation's state of incorporation and its principal place of business. *See Daimler*, 134 S. Ct. at 751, 754. Plaintiff alleges U.S. Xpress is a Nevada Corporation that is headquartered in Tennessee. (ECF ¶ 6). U.S. Xpress is neither incorporated, nor headquartered, in Virginia. Further, Plaintiff has not alleged any facts to indicate U.S. Xpress has continuous and systematic contacts with Virginia as to render the company virtually "at home" in Virginia. U.S. Xpress is simply not subject to general jurisdiction in Virginia. Plaintiff has not alleged any basis for general jurisdiction; nor are there facts to support it.

### b. The Court cannot exercise specific jurisdiction over the Purported Nonresident Class' claims.

Because U.S. Xpress is not subject to general jurisdiction, the Court can only exercise personal jurisdiction over the Purported Nonresident Class' claims if U.S. Xpress is subject to specific jurisdiction as to those claims. To show specific jurisdiction, their claims must "aris[e] out of or [be] related to the defendant's contacts with the forum." *Daimler*, 134 S. Ct. at 751. There must be a "link" between the defendant's alleged wrongdoing as to these plaintiffs and the forum state. *Bristol-Myers*, 137 S. Ct. at 1781. In the Supreme Court's 2017 *Bristol-Myers* decision, a nearly unanimous Court held that *all plaintiffs* must be able to show specific jurisdiction as to their claims, even if *some plaintiffs* can indisputably show personal jurisdiction as to their claims. Under this reasoning, the Court cannot exercise personal jurisdiction over U.S. Xpress as to the Purported Nonresident Class' claims.

### 1) A defendant cannot be forced to litigate nonresident plaintiffs' claims having no connection to the forum, even if other plaintiffs' claims are connected to that forum.

The *Bristol-Myers* decision arose in the context of a mass action case pertaining to the distribution of pharmaceuticals. Specifically, Bristol-Myers Squibb was sued by a mass of plaintiffs in a California state court for claims related to its distribution of Plavix, a prescription drug designed to prohibit blood clotting. *Id.* at 1778. The plaintiffs in the case consisted of 86 California residents and 592 residents of other states. *Id.*

On appeal, the United States Supreme Court addressed the question of whether a California court could exercise personal jurisdiction over claims by nonresident plaintiffs who were not prescribed the drug in the forum state, did not purchase the drug in the forum state, did not consume the drug in the forum state, and were not injured in the forum state. *Bristol-Myers*, 137 S. Ct. at 1781. Indeed, the only link between the nonresident plaintiffs' claims and the

forum was that the nonresidents' claims "were similar in several ways to the claims of the California residents." *Id.* at 1779. In its decision, the Supreme Court soundly rejected the idea that the California court could assert personal jurisdiction in that instance. In doing so, it confirmed that the Fourteenth Amendment's due process protections prohibit a court from forcing an out-of-state defendant from litigating claims that have no connection to the forum.

According to the *Bristol-Myers* decision, one of the animating principles behind the Fourteenth Amendment's due process protections is ensuring a defendant is not haled into a foreign court to defend against claims having little connection to that forum. *Id.* at 1779-81. In fact, the Supreme Court emphasized that the Fourteenth Amendment's "'*primary concern*'" in ensuring due process is mitigating "'*the burden on the defendant*.'" *Id.* at 1780 (citations omitted) (emphasis added). Because of this focus on fundamental fairness to the defendant, the Court held that "for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Id.* at 1781 (citations omitted).

This focus on fundamental fairness and burden on the defendant deprives a court of jurisdiction over claims that have no connection to the forum, *even if the defendant is already litigating related claims in that forum*. In other words, the fact that *resident* plaintiffs allegedly suffered from similar conduct that will be litigated by the defendant in the forum is immaterial:

> The mere fact that *other* plaintiffs . . . sustained the same injuries as did the nonresidents . . . does not allow the State to assert specific jurisdiction over the nonresidents' claims. As we have explained, "a defendant's relationship with a …third party, standing alone, is an insufficient basis for jurisdiction." *This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents.*

*Id.* (second emphasis added, citation omitted). In short, *Bristol-Myers* holds that a defendant cannot be forced to litigate a nonresident's claims in a forum having no connection to that

nonresident's claim, even if the nonresident's claims are brought in the same case as resident plaintiffs alleging similar claims.[2]

### 2) The Court does not have personal jurisdiction over the Purported Nonresident Class' claims.

The Court should dismiss Purported Nonresident Class' claims consistent with *Bristol-Myers*. Plaintiff's Amended Complaint does not include any allegations as to how the Purported Nonresident Class' claims are connected to Virginia. U.S. Xpress is not alleged to have made calls to these purported class members from Virginia. Nor are they alleged to have received violative calls in Virginia. To the contrary, the entire basis for personal jurisdiction over these nonresidents' claims is that their claims are similar to Plaintiff's claims. But the Supreme Court already rejected this approach in *Bristol-Myers*: "[t]he mere fact that other plaintiffs…sustained the same injuries as did the nonresidents…does not allow the State to assert specific jurisdiction over the nonresidents' claims. *Id.* at 1781.

Although lower federal courts have reached different conclusions as to *Bristol-Myers*' applicability to class actions (as opposed to mass actions), several recent decisions have applied *Bristol-Myers* to class cases. This includes a very recent decision applying *Bristol-Myers* to a TCPA class action. Specifically, in *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, No. 14 C 2032, 2018 U.S. Dist. LEXIS 39754, at *16 (N.D. Ill. Mar. 12, 2018), the District Court for the Northern District of Illinois found that it did not have personal jurisdiction over nonresident class members' TCPA claims based on *Bristol-Myers*. According to that court, a federal court cannot exercise personal jurisdiction over class claims of a nonresident class

---

[2] *Bristol-Myers* does not foreclose a plaintiff from bringing purported class claims on behalf of non-resident class members. He or she must simply bring the claims in a forum capable of exercising personal jurisdiction as to those claims. *Bristol-Myers*, 137 S. Ct. at 1783 ("Our decision does not prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over BMS.").

against a nonresident defendant based solely on the named plaintiff's connection to the forum. *Id.* at *54-55. In the court's words, "[b]ecause these nonresidents' claims do not relate to defendants' contacts with Illinois, exercising specific personal jurisdiction over defendants with respect to them would violate defendants' due process rights." *Id.* As a result, the Court excluded those nonresidents from the purported class. *Id.*

*Practice Management* is not an isolated holding. Several recent District Court opinions have adopted the same reasoning as *Practice Management*, dismissing class claims of nonresident class members. *See, e.g. Maclin v. Reliable Reports of Tex., Inc.*, No. 1:17cv2612, 2108 U.S. Dist. LEXIS 49511, at *8 (N.D. Ohio Mar. 26, 2018) ("The Court finds that *Bristol-Myers* applies to FLSA claims, in that it divests courts of specific jurisdiction over the FLSA claims of non-Ohio plaintiffs against Reliable."); *Anderson v. Logitech, Inc.*, No. 17 C 6104, 2018 U.S. Dist. LEXIS 36785, at *3 (N.D. Ill. Mar. 7, 2018) (striking putative nationwide class claims under the reasoning from *Bristol-Myers*); *DeBarnardis v. NBTY, Inc.*, No. 17C6125, 2018 U.S. Dist. LEXIS 7947, at *6 (N.D. Ill. Jan. 18, 2018) ("The Court believes that it is more likely than not based on the Supreme Court's comments about federalism that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions in a form, such as in this case, where there is no general jurisdiction over the Defendants."); *McDonnell v. Nature's Way Prod., LLC*, No. 16 C 5011, 2017 U.S. Dist. LEXIS 177892, at *9-10 (N.D. Ill. Oct. 26, 2017) (dismissing class claims by nonresidents because "a state may not assert specific jurisdiction over a nonresident's claim where the connection to the state is based on the defendant's conduct in relation to a resident plaintiff, and not the nonresident plaintiff"). *See also Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165, 2017 U.S. Dist. LEXIS 162812, at *12 n.4 (D. Az. Oct. 2, 2017) (citing *Bristol-Myers* and stating "[t]he Court also notes that it lacks personal

jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class."); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-cv-665, 2017 U.S. Dist. LEXIS 114733, at *27 (E.D. Pa. Jul. 24, 2017) (dismissing nationwide class alleging "Non-Pennsylvania Claims" "because these claims are not related to [defendants'] contacts with Pennsylvania.")

Like the courts above, the Court should dismiss the purported class claims on behalf any individuals who reside outside of Virginia based on *Bristol-Myers*. The Fourteenth Amendment's due process protections prohibit the Court from exercising personal jurisdiction over these individuals' claims against U.S. Xpress.

### 3) Although Plaintiff will cite decisions declining to enforce *Bristol-Myers*, applying *Bristol-Myers* is the most well-reasoned approach.

*Bristol-Myers*' impact on federal class actions is an issue that has divided courts recently. Plaintiff's opposition brief will likely cite to many of these opinions. In decisions where courts have declined to apply *Bristol-Myers* to class cases, courts have often questioned whether *Bristol-Myers* should be limited to mass actions and whether the Supreme Court's analysis would change in cases involving federal question claims. None of these questions should alter the conclusion that *Bristol-Myers* forecloses the Purported Nonresident Class' claims here.

#### a) *Bristol-Myers* applies with equal force to class actions.

Some courts addressing *Bristol-Myers* in class actions have recognized that the Supreme Court's decision was issued in a mass action, as opposed to a class action context. *See, e.g. Feldman v. BRP United States, Inc.*, No. 17-CIV-61150, 2018 U.S. Dist. LEXIS 53298, at *15 (S.D. Fla. Mar. 28, 2018). They have used this distinction to limit *Bristol-Myers* to mass actions. This approach is inconsistent (1) with the *Bristol-Myers* decision itself; and (2) the Constitutional law surrounding class action litigation.

### i. Limiting *Bristol-Myers* to mass actions is inconsistent with the decision itself.

*Bristol-Myers* was not a class action case. It was a mass action brought on behalf of several hundred plaintiffs, some of whom were California residents and some of whom were not. But the decision did not turn on whether it was a class or mass action. Nor did the Supreme Court limit its holding to mass actions in any way. Rather, the Supreme Court held, as a matter of Constitutional law, that the "mere fact that other plaintiffs…sustained the same injuries as did the nonresidents …does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Bristol-Myers*, 137 S.Ct. at 1781. In making that statement, the Supreme Court confirmed that a defendant cannot be required to litigate claims in a foreign forum when those claims – and the defendant – have no connection to that forum.

This is a principle of Constitutional law that turns on fundamental fairness to a defendant and a need to limit an impermissible burden on that defendant. These concerns apply with equal force in class or mass actions. Indeed, Justice Sotomayor suggested in dissent that the decision could easily be interpreted as applying to class actions. *Id.* at 1789 n.4 (expressing concern regarding the reach of the Court's decision and noting that the Court "does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there") (Sotomayor, J., dissenting). Although *Bristol-Myers* was decided in a mass action and not a class action context, it is a distinction without a difference for Constitutional purposes. A defendant's Constitutional protections do not turn on the whims of a plaintiff's pleading strategy. *See, e.g. Practice Mgmt*, 2018 U.S. Dist. LEXIS 39754, at *47 ("[I]t not clear how Practice Management can distinguish the Supreme Court's basic holding in *Bristol-Myers* simply because this is a class action."). "The constitutional requirements of due process do[] not

wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case." *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696, 2017 U.S. Dist. LEXIS 153265, at *37 (E.D.N.Y. Sept. 20, 2017).

### ii. Rule 23 cannot limit U.S. Xpress' Constitutional rights.

As to the second issue, some courts have held that Rule 23 of the Federal Rules of Civil Procedure provides the defendant with sufficient protections so as to minimize any due process concerns. *See, e.g. Molock v. Whole Foods Mkt., Inc.*, No. 16-cv-02483, 2018 U.S. Dist. LEXIS 42482, at *21 (D.D.C. Mar. 15, 2018) (finding that the need to satisfy elements like commonality and typicality under Rule 23 provide defendants with due process protections). This perspective is wrong for several fundamental reasons.

First, the fact that a court must find that the elements of Rule 23 are satisfied – commonality, typicality, adequacy, predominance, superiority, ascertainability – before certifying a class does not protect the defendant from being haled into a foreign court with no connection to the claims of the nonresident class members. Whether the claims of the named plaintiff are similar to the claims of the purported class members has no bearing on whether it is fair to force the defendant to litigate against all claims *in that forum*. Similarity of claims and fairness to the defendant are separate concepts. The former deals with administrative ease and streamlining of litigation, while the latter deals with a defendant's Constitutional rights. Indeed, in *Bristol-Myers*, the Supreme Court held that it violates due process to force a defendant to litigate in a foreign forum *even* "when third parties…can bring claims similar to those brought by the nonresidents." *Bristol-Myers*, 137 S. Ct. at 1781. The Supreme Court assumed similarity among plaintiffs' claims and still found a due process issue.

Second, Rule 23 cannot be used to deny U.S. Xpress a Constitutional right to due process. Under the Rules Enabling Act, the Supreme Court has the power to prescribe rules of practice. 28 U.S.C. § 2072(a). Pursuant to that authority, the Supreme Court prescribed the Federal Rules of Civil Procedure, including Rule 23. But these rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2702(b). "Rule 23's requirements must be interpreted in keeping with Article III constraints." *Anchem Prods. V. Windsor*, 521 U.S. 591, 613 (1997). In other words, courts cannot use Rule 23 to limit a party's Constitutional rights. In fact, the Court must decide class certification issues *after* resolution of Constitutional issues because Constitutional issues limit the reach of Rule 23. *Id.* at 612 ("We agree that 'the class certification issues are dispositive,' because their resolution here is logically antecedent to the existence of any Article III issues, it is appropriate to reach them first.") (citations omitted).

With this backdrop in mind, a defendant cannot be required to litigate claims in a forum where it is not subject to personal jurisdiction, even if a plaintiff could satisfy Rule 23. The minimum contacts needed for personal jurisdiction are a Constitutional requirement. That requirement does not vanish simply because the plaintiff may be able to meet Rule 23's requirements for class certification. *See, e.g. Practice Mgmt.*, 2018 U.S. Dist. LEXIS 39754, at *47 ("Under the Rules Enabling Act, a defendant's due process interest should be the same in the class context."). Not only does the *Bristol-Myers* decision itself suggest that it should apply to class actions, but Rule 23 cannot limit U.S. Xpress' Constitutional rights.

### b) *Bristol-Myers'* reasoning applies to federal statutes like the TCPA.

Last, some courts addressing *Bristol-Myers* have questioned whether it extends to claims in federal cases brought under federal question jurisdiction. *See, e.g. in Re Morning Song Bird Food Litigation*, No. 12cv01592, 2018 U.S. Dist. LEXIS 44825, at *16 (S.D. Cal. Mar. 19,

23

2018). They have raised this issue based on the idea that the "Supreme Court specifically left open the question of whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* This question, however, is inapplicable here because the *Fourteenth Amendment* provides U.S. Xpress' due process protections – which is the same Constitutional provision the Supreme Court addressed in *Bristol-Myers*. *See Bristol-Myers*, 137 S. Ct. at 1779 (analyzing the Fourteenth Amendment's due process protections).

Specifically, as discussed above, the TCPA "does not authorize nationwide service of process in private actions." *Neuer v. Dental Res. Sys.,* No. 14-2319, 2015 U.S. Dist. LEXIS 97368, at * (D. Kan. July 27, 2015) (citations omitted). This means that under Federal Rule of Civil Procedure 4(k)(1)(A), the Court assesses whether U.S. Xpress would be subject to personal jurisdiction in a court of general jurisdiction in Virginia. Fed. R. Civ. P. 4(k)(1)(A). This requires the Court to ask whether service is "authorized by the long-arm statute" and whether the exercise of personal jurisdiction "comport[s] with Fourteenth Amendment due process requirements." *Christian Sc. Bd. Of Dirs. Of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Thus, even though the present case is in federal court and pertains to a federal statute, the Fourteenth Amendment (not the Fifth Amendment) governs the due process analysis – just as in *Bristol-Myers*. *See Practice Mgmt.*, 2018 U.S. Dist. LEXIS 39754, at *49 (analyzing personal jurisdiction over a TCPA claim under the Fourteenth Amendment because the TCPA does not authorize nationwide service of process in private actions).

## Conclusion

U.S. Xpress respectfully asks the Court to dismiss two aspects of Plaintiff's Amended Complaint. The Court should dismiss Count One because Plaintiff cannot plausibly allege that U.S. Xpress called his residential telephone line. The Court should also dismiss the claims of the

non-Virginia residents in the purported nationwide class because U.S. Xpress is not subject to personal jurisdiction as to those claims.

Dated: April 4, 2018

Respectfully submitted,

**U.S. Xpress, Inc.**

By: ___/s/ *David M. Gettings*_____
                              Of Counsel

John C. Lynch (VSB No. 39267)
David M. Gettings (VSB No. 80394)
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
E-mail: john.lynch@troutmansanders.com
E-mail: david.gettings@troutmansanders.com
*Counsel for Defendant U.S. Xpress, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| **CHRISTOPHER MORGAN, individually** | ) | |
| **and on behalf of a class of persons and** | ) | |
| **entities similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:17-cv-00085** |
| | ) | |
| **U.S. XPRESS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of April, 2018, I electronically filed the foregoing *Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) and 12(b)(2)* with the Clerk of the Court using the CM/ECF system, with electronic notification and copy being sent via CM/ECF to the following:

**Counsel for Plaintiff**
Michael B. Hissam, Esq.
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
mhissam@baileyglasser.com

       /s/ David M. Gettings
David M. Gettings
Virginia State Bar No. 80394
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: 757-687-7747
Facsimile: 757-687-1545
Email: david.gettings@troutmansanders.com

*Counsel for Defendant U.S. Xpress, Inc.*

26