CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
07/25/2018
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER MORGAN,<br><br>         *Plaintiff,*<br>v.<br><br>U.S. XPRESS, INC.,<br><br>         *Defendant.* | CASE NO. 3:17-cv-00085<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

   This case arises under the Telephone Consumer Protection Act, or TCPA. That statute prohibits, among other things, the use of various types of prerecorded calls. *See* 47 U.S.C. §§ 227(b)(1)(A), (b)(1)(B). The Defendant in this case, U.S. Xpress, Inc., is a Nevada trucking company headquartered in Tennessee. (Dkt. 4 at ¶6). The Plaintiff, Virginia resident Christopher Morgan, alleges Defendant used prerecorded calls to recruit him to become a truck driver. (*Id.* at ¶¶5, 12–14). Importantly, Plaintiff allegedly received these calls on a "residential, cellular telephone line." (*Id.* at ¶12). Plaintiff filed this putative class action in response.

   Defendant has moved to dismiss two portions of the complaint. (Dkt. 11). The Court will grant the motion to dismiss Count One because Plaintiff has failed to plausibly allege the calls were made to a "residential telephone line" within the meaning of the relevant section of the TCPA. The Court will deny the motion to dismiss the claims of putative nonresident class members because the Court has personal jurisdiction over Defendant as to their claims.

          I.  STANDARD

   The motion to dismiss Count One is evaluated under the familiar Fed. R. Civ. P. 12(b)(6) standard. The Rule 12(b)(6) motion tests the legal sufficiency of a complaint to determine whether Plaintiff has plausibly alleged a claim. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). The Court takes all factual allegations in the complaint as true and draws all reasonable

inferences in the Plaintiff's favor. *Id.* at 212. But the Court will not "accept the legal conclusions drawn from the facts," *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The motion to dismiss putative nonresident class members for lack of personal jurisdiction is evaluated under Fed. R. Civ. P. 12(b)(2). "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a *prima facie* showing in support of its assertion of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558, 560 (4th Cir. 2014). In conducting its analysis, "the district court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id*. at 558.

## II. ANALYSIS

The allegations in the introductory paragraph adequately summarize the complaint for purposes of this motion. The parties simply dispute how the law applies to those few allegations.

### A. Motion to dismiss Count One

Count One of the complaint alleges Defendant violated the TCPA by calling Plaintiff's "residential telephone line." (Dkt. 4 at ¶30). Count Two alleges Defendant violated the TCPA by calling Plaintiff's "cellular telephone line." (*Id.* at ¶33). Both counts arise out of the same calls to Plaintiff's cell phone, which he labels a "residential, cellular telephone line." (*Id.* at ¶12). Plaintiff argues the same calls can give rise to both Counts. Defendant disagrees, and argues that calls made to a cell phone, even when used at home, are not calls made to "residential telephone lines." The Court holds that the structure and language of the TCPA demonstrate that

2

calls made to a cell phone are not calls made to a "residential telephone line," and so Count One will be dismissed. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

To start, Plaintiff's characterization of the cell phone as a "residential, cellular telephone line" is not determinative of this question. These are not factual allegations, but legal terms drawn from the operative statute. And "[t]he court is not obligated to assume the veracity of the legal conclusions drawn from the facts alleged." *Birmingham v. PNC Bank, N.A.*, 846 F.3d 88, 92 (4th Cir. 2017). The underlying factual allegations, which the Court credits, are simply that Plaintiff received four phone calls to his cell phone. (Dkt. 4 at ¶¶12–14). The Court also fairly infers, from Plaintiff's labeling of the line as "residential," that Plaintiff used this cell phone at his home, at least some of the time. (*Id.* at ¶12). The question is simply how the relevant sections of the TCPA treat those calls.

The structure of the statute makes it clear that a call can be to either a cell phone or residential line, and the statute addresses those two distinct possibilities in two different sections. Section 227(b)(1)(A)(iii) prohibits automated or prerecorded calls made "to any telephone number assigned to a . . . cellular telephone service . . . ." And Section 227(b)(1)(B) prohibits automated or prerecorded calls made "to any residential telephone line . . . ." These side-by-side provisions anticipate calls made to two different types of phones. Plaintiff's arguments would erase that distinction.

Congress's structural choice to treat these different types of calls differently has been observed by abundant and uniform (although largely out-of-circuit) authority. *See, e.g., Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014) (distinguishing a case that

3

discussed Section 227(b)(1)(B), which concerns calls to residential lines, because "the telephone number in question here, is a cell-phone number"); *Rahn v. Bank of Am., N.A.*, No. 1:15-CV-4485-ODE-JSA, 2016 WL 7325657, at *4 (N.D. Ga. June 24, 2016) ("The statute clearly differentiates between calls to residential lines (covered by § 227(b)(1)(B)) and calls to cellular and other types of mobile lines (§ 227(b)(1)(A)), as is applicable here."), *report and recommendation adopted*, No. 1:15-CV-4485-ODE-JSA, 2016 WL 7335392 (N.D. Ga. Sept. 2, 2016); *Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1249 (E.D. Cal. 2013) ("[T]he TCPA makes a clear distinction between the provisions that apply to residential lines and those that apply to numbers assigned to a cellular telephone service."). Admittedly, fewer courts have considered the precise question presented here, whether one phone can serve as both a residential and cellular line, but at least one court has rejected it. *See Cunningham v. Carribean Cruise Lines, Inc.*, No. 15-62580-CIV, 2016 WL 7494871, at *2 (S.D. Fla. Dec. 29, 2016) ("While Plaintiff argues that his cellular phone serves as both a mobile and residential line, the Eleventh Circuit distinguishes residential land line telephone numbers from cell-phone numbers. . . . [T]he Court finds Plaintiff's assertion that a cellular phone can be converted into a residential phone unavailing."). This authority recognizing that the statute's structure addresses different types of phones in different sections of the statute supports the Court's conclusion.

Additionally, Congress used different language to discuss cell phones and residential lines, further demonstrating that they are not interchangeable. When regulating calls made to cell phones, Section 227(b)(1)(A)(iii) addresses calls made to "telephone number[s] assigned to a . . . cellular telephone service . . . ." Contrast that with how Section 227(b)(1)(B) addresses "residential telephone *line*[*s*]." Of course, cell phones are wireless, and so one does not have a cellular "line," at least in the same way one has a "landline." The statute recognizes this

4

distinction, using a broader formulation (*i.e.*, "number[s] assigned to . . .") to cover cell phones than the residential "lines" formulation that covers landlines. Shoehorning cell phones into the "residential telephone lines" portion of the statute ignores these distinctions.[1]

Finally, Plaintiff's proposed readings creates practical problems. The finely reticulated scheme discussed above creates careful categories. It would be odd if a cell phone, largely used outside the home and at work, became a residential line just because it was brought home and thereby erased those statutory categories. How frequently would it need to be used at home before it became a residential telephone line? Would it revert to its previous state as a mere cell phone if you added a landline at your house? How would these things be proved? Thankfully, these difficult questions can be avoided simply by following the natural reading of the TCPA and treating cell phones and residential lines differently.

Plaintiff responds by citing cases and regulations that concern a different part of the TCPA. Plaintiff turns from Section 227(b)(1) to Section 227(c)(5), which does not govern automatic dialing at all; it instead gives the Federal Communications Commission authority to create a "Do Not Call" directory. And, instead of using the "residential telephone *lines*" language discussed above, it pointedly refers to "residential telephone *subscribers*." While the FCC has interpreted this "residential telephone *subscriber*" language to include cell phones for purposes of the "Do Not Call" directory, this interpretation does not inform how the phrase "residential telephone *line*" should be understood in Section 227(b)(1)(B). *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14038 (2003). The FCC order actually points to Section 227(b)(1), the section of the TCPA implicated

---

[1] Plaintiff argues that Section 227(b)(1)(B)'s use of "residential telephone line" is meant to be juxtaposed against "business" telephone lines, not cell phones. Plaintiff cites no law for this proposed reading, which is contradicted uniformly by the above case law.

in this case, as an example of how Congress "knew how to address wireless services or consumers explicitly." *Id*. Section 227(b)(1)'s "explicit" treatment of the differing categories is then contrasted with the ambiguous language found in the "Do Not Call" context. *Id*. This interpretation of a different portion of the statute, that uses different language, and which explicitly differentiates itself from the relevant text, does not inform the interpretation of Section 227(b)(1). Plaintiff's arguments concerning that order fail.[2]

The motion to dismiss Count One will be granted.[3]

**B.      Motion to dismiss putative non-resident class members**

In the second portion of its motion, Defendant argues that it "is not subject to personal jurisdiction as to [non-Virginia resident] class members' claims." (Dkt. 11 at 11). This argument turns on Defendant's belief that *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017), was a "seminal" case that revolutionized class action practice. (Dkt. 12 at 2). The Supreme Court, however, described its work more modestly, writing that the case was a "straightforward application . . . of settled principles of personal jurisdiction [that] will not result in the parade of horribles that respondents conjure up." *Bristol-Myers Squibb*, 137 S. Ct. at 1783. Because this Court does not believe *Bristol-Myers Squibb* upended years of class action practice *sub silentio*, Defendant's motion will be denied.

---

[2]     While the Hobbs Act prevents district courts from setting aside FCC interpretations of the TCPA, *see Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 464 (4th Cir. 2018), Plaintiff's argument about it is not implicated here because this FCC interpretation does not concern Section 227(b)(1). Likewise, Plaintiff's cases about the "Do Not Call" context are not relevant to Section 227(b)(1) because of the structural and textual differences.

[3]     One other brief argument also fails. Plaintiff complains Defendant is only seeking to dismiss the "residential" count to prevent certification of a larger class. While such a strategy may or may not be successful, *see Fisher v. MJ Christensen Jewelers, LLC*, 2018 WL 1175215, at *5 (D. Nev. Mar. 6, 2018) (finding commonality between residential and cell phone owners in class certification), Defendant's underlying strategy is legally irrelevant to the sufficiency of Plaintiff's complaint.

Taking a step back, "two conditions must be satisfied" for this Court "to validly assert personal jurisdiction over a non-resident defendant." *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Id*. Here, the Defendant only argues that personal jurisdiction does not comport with due process; it does not raise any separate arguments under Virginia's long-arm statute.

There are two types of personal jurisdiction under the Due Process Clause: general and specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). Defendant is not subject to general jurisdiction in Virginia; it is a Nevada corporation headquartered in Tennessee. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (U.S. 2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."). So the question is whether there is specific jurisdiction. Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 919. In order to be subject to personal jurisdiction, the "defendant must have purposefully established minimum contacts in the forum State such that [it] should reasonably anticipate being haled into court there," and in making this determination, "a court must weigh the totality of the facts before it." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016).

Defendant does not dispute that it is subject to personal jurisdiction as to the claims made by putative class members injured in Virginia. However, Defendant does deny that it is subject to personal jurisdiction as to the claims made by class members injured outside of Virginia. This

attempt to parse nationwide class actions into state-by-state actions appears to have grown out of the Supreme Court's 2017 *Bristol-Myers Squibb* decision. The question for this Court is what effect, if any, *Bristol-Myers Squibb* has on the ability of plaintiffs to bring putative class actions on behalf of a nationwide class against defendants subject to only to specific jurisdiction.

Because of its importance to Defendant's argument, it is helpful to briefly summarize *Bristol-Myers Squibb*. That case was a tort "mass action" where a nationwide class of plaintiffs each brought their claims against a pharmaceutical company in California state court. The Supreme Court held that the California court's exercise of personal jurisdiction over the non-resident plaintiffs violated due process. *Bristol-Myers Squibb*, 137 S. Ct. at 1782. This was because, "[i]n order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Id.* at 1780 (emphasis in the original, citations omitted). Without this connection, the defendant could be overly burdened by being sued in a forum it had never contacted. *Id.* And so, the Court explained:

> The mere fact that other plaintiffs were prescribed, obtained, and ingested [the pharmaceutical company's drug] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims. As we have explained, 'a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction.' This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents.

*Id.* at 1781 (citation omitted). Justice Sotomayor, the only dissenting justice, noted that "[t]he Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789 n.4. Defendant argues that while that question was left open by the Court, the logic of the case extends to class actions.

This Court holds, alongside the "most of the courts that have encountered this issue," *Chernus v. Logitech, Inc.*, No. CV 17-673(FLW), 2018 WL 1981481, at *7 (D.N.J. Apr. 27, 2018) (collecting cases), that *Bristol-Myers Squibb*'s holding and logic do not extend to the federal class action context.[4] This is for two primary reasons. First, "in a mass tort action [like *Bristol-Myers Squibb*], each plaintiff is a real party in interest to the complaints; by contrast, in a putative class action [like the instant case], one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the complaint." *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 126 (D.D.C. 2018) (denying motion to dismiss on this grounds). This is critically important because *Bristol-Myers Squibb* framed the specific jurisdiction analysis at the level of the suit: "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" 137 S. Ct. at 1780 (emphasis in the original, citations omitted). In this case, unlike *Bristol-Myers Squibb*, there is only one suit: the suit between Plaintiff and Defendant. While Plaintiff may end up representing other class members, this is different than a mass action where independent suits with independent parties in interest are joined for trial. *See Devlin v. Scardelletti*, 536 U.S. 1, 2 (2002) ("[N]onnamed class members . . . may be parties for some purposes and not for others."). Accordingly, unlike the

---

[4] *See, e.g., Becker v. HBN Media, Inc.*, No. 18-60688-CIV, 2018 WL 3007922, at *3 (S.D. Fla. June 6, 2018); *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, No. 617CV1734ORL37KRS, 2018 WL 1701994, at *6 (M.D. Fla. Apr. 4, 2018) (TCPA action); *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114 (D.D.C. 2018); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*, No. CV 17-2161, 2018 WL 1377608, at *4 (E.D. La. Mar. 19, 2018); *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360 (N.D. Ga. 2018); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 09-2047, 2017 WL 5971622, at *12 (E.D. La. Nov. 30, 2017); *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017) (FLSA collective action); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *3 (N.D. Cal. Sept. 22, 2017).

mass action in *Bristol-Myers Squibb*, the only suit before the Court does arise out of or relate to Defendant's contacts with the forum.

Second, Rule 23's requirements (numerosity, commonality, typicality, adequacy of representation, predominance, and superiority) "supply due process safeguards not applicable in [*Bristol-Myers Squibb*'s] mass tort context." *Molock*, 297 F. Supp. 3d 114. "Often, mass torts cannot qualify for class action treatment because they are unable to satisfy these standards." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 09-2047, 2017 WL 5971622, at *14 (E.D. La. Nov. 30, 2017) (rejecting Defendant's argument in response to a motion to reconsider class certification). And so these requirements help ensure that the claims of a class action's named plaintiff have more commonality and typicality with those of class members than in a mass tort action. This is important because the defendant in a class action will be "presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense." *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1366 (N.D. Ga. 2018) (denying motion to dismiss on this grounds). This is fundamentally different than the significant variations that might occur in a tort mass action like *Bristol-Myers Squibb*. *Id.* Due process concerns raised by that aggregation of claims are lessened in the class action context.

Admittedly, some other district courts have accepted Defendant's position in spite of these arguments.[5] The best argument found in these cases is based on the uncontroversial

---

[5] The Court notes that many of these decisions all arise out of the Northern District of Illinois, where subsequent judges have decided to follow an early decision in that district that accepted this argument. *See, e.g., Practice Management Support Services Inc. v. Cirque du Soleil Inc.*, No. 14 C 2032, 2018 WL 1255021, at *16 (N.D. Ill. Mar. 12, 2018); *DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *1 (N.D. Ill. Jan. 18, 2018); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 875 (N.D. Ill. 2017); *McDonnell v. Nature's Way Prod., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017). However, this is not to say courts outside that district have not accepted Defendant's argument. *See, e.g., Maclin v. Reliable Reports of Texas, Inc.*, No. 1:17 CV 2612, 2018 WL 1468821, at *3 (N.D. Ohio Mar. 26, 2018)

proposition that "Rule 23's [class action] requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that the [federal court] rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592 (1997) (quoting 28 U.S.C. § 2072(b)). These courts then characterize *Bristol-Myers Squibb* as holding "that the Fourteenth Amendment's due process clause precludes nonresident plaintiffs injured outside the forum from aggregating their claims with an in-forum resident." *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, No. 14 C 2032, 2018 WL 1255021, at *16 (N.D. Ill. Mar. 12, 2018). The courts then reason: "Under the Rules Enabling Act, a defendant's due process interest should be the same in the class context." *Id.* Or, put differently, "[t]he constitutional requirements of due process does not wax and wane when the complaint is individual or on behalf of a class." *In re Dental Supplies Antitrust Litig.*, No. 16CIV696BMCGRB, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017).

While it is true that the Rules Enabling Act cannot abridge substantive rights, this argument neglects the above observation from *Bristol-Myers Squibb* that the specific jurisdiction inquiry happens at the level of the "suit." 137 S. Ct. at 1780. It is the Supreme Court then, not the Federal Rules of Civil Procedure, that has framed the substantive right at this level of generality. *Id.* And so this Court concludes that when a court validly has personal jurisdiction over a defendant for purposes of that class action suit, the defendant may not attempt to parse the Court's exercise of personal jurisdiction at this finer level of granularity.

---

(FLSA collective action); *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017); *In re Dental Supplies Antitrust Litig.*, No. 16CIV696BMCGRB, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017); *Spratley v. FCA US LLC*, No. 317CV0062MADDEP, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. CV 16-665, 2017 WL 3129147, at *6 (E.D. Pa. July 24, 2017).

Finally, in denying this motion, the Court notes that Congress created class actions to help "overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (internal quotation marks omitted). The Court is reluctant to believe that the Supreme Court's "straightforward application . . . of settled principles of personal jurisdiction" in *Bristol-Myers Squibb* requires a substantial limiting of that valuable tool. Accordingly, the Court will not rush to carry that case beyond its holding and logic, and so will deny this aspect of Defendant's motion to dismiss.[6]

### III. CONCLUSION

Plaintiff's failure to plausibly allege the calls were made to a "residential telephone line" within the meaning of the relevant section of the TCPA dooms Count One. But the Court will deny the motion to dismiss the claims of putative nonresident class members because the Court has personal jurisdiction over Defendant as to their claims. For these reasons, the motion to dismiss will be granted only in part. An appropriate order will issue. The Clerk of Court is requested to send a copy of this Opinion and the accompanying Order to the parties.

Entered this 25th day of July, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] The Court does not rely on Plaintiff's argument concerning *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). In that case, the Court held that it did not violate the due process rights of nonresident class action *plaintiffs* for the Court to exercise personal jurisdiction over them. But "the Court explained that the authority of a State to entertain the claims of nonresident class members is entirely different from its authority to exercise jurisdiction over an out-of-state defendant." *Bristol-Myers*, 137 S. Ct. at 1783 (summarizing *Shutts*). And so, in *Bristol-Myers*, the Court said *Shutts* "has no bearing on the question presented here [*i.e.,* jurisdiction over a defendant]." *Id.* at 1783.